**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PUERTO RICO TELEPHONE COMPANY, | |
| Plaintiff, | |
| v. | CIVIL NO.: 22-1315(MEL) |
| MUNICIPALITY OF AGUADA, et. al., | |
| Defendants. | |

**OPINION AND ORDER**

## I.   INTRODUCTION

Puerto Rico Telephone Company ("Plaintiff" or "Claro") brought this civil against the Municipality of Aguada, Hon. Christian Cortés-Feliciano, in his capacity as Mayor of the Municipality of Aguada, and Wesley Vega, in his capacity as Planning Director of the Municipality of Aguada ("Defendants" or "the Municipality"), for alleged violations of federal Telecommunications Act of 1996, 47 U.S.C. §§ 151 et seq. ("TCA") based on Defendants' denial of an application to install fiber optic cables and poles in the Municipality of Aguada in Puerto Rico. More specifically, on June 30, 2022, Plaintiff filed suit against Defendants alleging that the denial of their application violated various provisions of 47 U.S.C. § 332 and 47 U.S.C. § 253(a). ECF No. 1. Defendants answered the complaint on August 18, 2022. ECF No. 7.

Pending before the Court is Plaintiff's motion for summary judgment.[1] ECF No. 55. Plaintiff argues that the Municipality's consideration of their request to carry out a fiber optic

---

[1] Plaintiff filed a motion for summary judgment on November 21, 2022. ECF No. 9. On February 14, 2024, Plaintiff filed a second motion for summary judgment. ECF No. 48. The Court ordered Plaintiff to consolidate and resubmit its motions for summary judgment as one motion. ECF No. 52. Thus, the Court only considers the arguments made in the consolidated motion for summary judgment.

project was procedurally and substantively subject to federal law under provisions of 47 U.S.C. § 332(c)(7)(B) of the Telecommunications Act which "compels municipalities to base any denial requests on substantial evidence contained in a written record and limits the grounds on which they can deny requests." ECF No. 55 at 2. Plaintiff further argues that 47 U.S.C. § 253(a) likewise "significantly limits local authority to intervene with the offering of telecommunications services and the deployment of equipment and facilities used to offer those services." *Id*. Defendants filed a response in opposition on July 5, 2024. ECF No. 61. Defendants contend that they complied with all relevant federal law in denying Plaintiff's request. ECF No. 61 at 10-15. Defendants also challenge Plaintiff's expert report prepared by Engineer Ricardo Matos-Acosta ("Eng. Matos-Acosta"), which they argue does not comport with Federal Rule of Evidence 702. *Id*. at 3-10 (internal citation omitted). Plaintiff filed a reply on August 2, 2024. ECF No. 65. For the reasons detailed below, Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## II.    LEGAL STANDARDS

### A. Summary Judgment

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation."

*Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011) (quoting *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp.*, 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however, "rely only on *uncontradicted* evidence . . . So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan*, 904 F.2d at 115. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. P. R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported

speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

### B. Admission of Expert Testimony

Admission of expert testimony is governed by Federal Rules of Evidence 702 ("Rule 702") and 703 ("Rule 703"), which codifies the principles articulated in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). When presented with a challenge to the admissibility of expert testimony, a court "must determine whether the expert witness is qualified and has the specialized knowledge that will 'assist the trier of fact to understand evidence or to determine a fact in issue.'" *Bogosian v. Mercedes-Benz of N. Am.*, 104 F.3d 472, 476 (1st Cir. 1996) *(quoting* Fed. R. Evid. 702).

Rule 703, in relevant part, provides that an expert may base an opinion on facts or data in the case that the expert has been "made aware of or personally observed." Fed. R. Evid. 703. Rule 702, on the other hand, provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if a proponent demonstrates by a preponderance that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 has been interpreted liberally in favor of the admission of expert testimony." *Saldaña Cabán v. Centro Médico del Turabo, Inc.*, 2023 WL 5122171, at *3 (D.P.R. August 10, 2023) (quoting *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006)).

A district court examining the reliability aspect of an expert's opinion thus must determine: 1) whether the expert is qualified, 2) whether the opinion is supported by reliable information or

knowledge, and 3) whether the opinion is supported by logical scientific reasoning or methodology. *Daubert*, 509 U.S. at 589-90; *see also Mitchell v. United States*, 141 F.3d 8, 14 (1st Cir. 1998). As the First Circuit has observed, "*Daubert* does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." *United States v. Mooney,* 315 F.3d 54, 63 (1st Cir.2002) (citation and internal quotation marks omitted). "It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Id.* (citation and internal quotation marks omitted). "The Rule 702 inquiry is a 'flexible one', ..., and there is no particular procedure that the trial court is required to follow in executing its gatekeeping function under *Daubert*." *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002).

## III.  MATERIAL FACTS NOT IN CONTROVERSY[2]

### A.  The Denial of Claro's Request

Claro is licensed by the Federal Communications Commission ("FCC") to provide personal wireless telecommunications and broadband services in Puerto Rico, including to the totality of the Municipality of Aguada. ECF No. 56 at 2, ⁋ 2; ECF No. 61-1 at 1, ⁋ 3; ECF No. 47 at 25, ⁋ 2. On September 18, 2021, a letter signed by Claro's Engineering Supervisor was sent to the Municipality outlining the blueprint of a project for the installation of 506 feet of fiber-optic cable along with three additional poles at k.m. 5.3 Interior of P.R. Road 414 at the Río Grande Ward of Aguada. ECF No. 61-3 at 2, ⁋ 6; ECF No. 61-2. In the letter, Claro requested the Municipality's agreement to work on the proposed project. ECF No. 61-3 at 3, ⁋ 7; ECF No. 61-2

---

[2] Some of the facts in this section come from the parties' factual stipulations for trial included as part of their Joint Pretrial Conference Report. ECF No. 47 at 24-27. The Court gave the parties the opportunity to object to the use of these twenty stipulated facts as uncontested for purposes of resolving Plaintiff's pending motion for summary judgment. ECF No. 67. The parties did not file any objection by the date specified in said order; therefore, the Court deems these facts uncontested, not only for trial purposes, but also to address this motion for summary judgment. *Id*.

at 1. On September 23, 2021, Claro requested the Municipality's endorsement of their request to install fiber optic cables and poles. ECF No. 56 at ⍭ 30; ECF No. 61-1 at 7, ⍭ 30. After no word from the Municipality, on April 22, 2022, Claro filed suit in a court of the Commonwealth of Puerto Rico against the Municipality of Aguada requesting a writ of mandamus ordering the Municipality to respond to Claro's request. ECF No. 47 at 26, ⍭ 18. During a hearing held on May 18, 2022, the Municipality agreed to notify Claro, in writing, of the Municipality's position on Claro's request for the endorsement of the fiber buildout. ECF No. 47 at 26, ⍭ 19. On June 1, 2022, the Municipality issued a notice denying Claro's request (the "Denial Notice"). ECF No. 56 at 8, ⍭ 31; ECF No. 61-1 at 7, ⍭ 31;  ECF No. 47 at 27, ⍭ 20; ECF No. 1-1.

### B.  The Ordinance

To support the denial of the endorsement, the Municipality cited the "public policy" established in Municipal Ordinance Number 23 (Series 2012-2013) (the "Ordinance").[3] ECF No. 56 at 8, ⍭ 32; ECF No. 61-1 at 7, ⍭ 32; ECF No. 1-2. The Ordinance was passed by the Aguada Municipal Legislature on November 13, 2012, and signed into law by former Mayor Luis E. Echevarría-Santiago on November 26, 2012. ECF No. 61-3 at 1, ⍭ 1; ECF No. 1-2 at 1-6. The Ordinance contains a "Statement of Motives" which discusses public policy concerns having to do with the "installation of commercial radio frequency transmission stations (antennas)," on the health and safety of communities. ECF No. 61-3 at 2, ⍭ 2; ECF No. 1-2 at 1-2. Specifically, the Ordinance discusses correlations between long-term exposure to mobile phone emissions and certain types of cancer. *Id*. The Ordinance contains additional statements that reiterate the health concerns previously mentioned in the "Statement of Motives," as well as discussing the

---

[3] For this Exhibit, and any discussed hereafter, the Court's numbering refers to the ECF page numbering, not the document's page numbering.

Municipality's desire for the general public to have a say in the installation of cellular communications infrastructure. ECF No. 61-3 at 2, ⁋ 3; ECF No. 1-2 at 3.

> WHEREAS: Public Law Number 89 of June 6, 2000, created the Construction, Installation, and Placement of Puerto Rico Telecommunications Towers Act. This law establishes the parameters and distances for the construction of telecommunication towers on which radio frequency transmission stations (antennas) are installed. This law defines the term "antenna" and provides the requirements for anchoring and designing them; establishes a system for integrated or co-placement use; requires notification to surrounding areas, based on the distance provided in the law; and provides that the Planning Board must adopt all pertinent regulatory orders for compliance thereof.[ ]

> WHEREAS: The Municipal Administration of Aguada believes that the general public should have a say and that existing public policy in the municipal governments should be taken into account whenever an antenna of this nature is going to be installed. We are not opposed to progress; nonetheless, everything should be done in harmony with the environment, ensuring the health and well-being of all citizens

> WHEREAS: By virtue of the above, the municipal government of Aguada, as a means of protecting our own health and that of our children and loved ones, needs to establish, by way of this Ordinance, [a means] to prevent antennas from being erected in proximity to, or in middle of, inhabited sectors or places where people remain for extended periods of time, such as families, schools, or permanent workplaces.

ECF No. 61-3 at 2, ⁋ 3; ECF No. 1-2 at 3. The Ordinance also contains six substantive provisions, establishing requirements for the "installation of commercial radio frequency transmission stations (antennas)." ECF No. 61-3 at 2, ⁋ 3; ECF No. 1-2 at 3-5. The first section reads:

> To establish the public policy for installing commercial radio frequency transmission stations (antennas) and to prohibit the installation of commercial radio frequency transmission stations (antennas) in locations where a high concentration of families reside, or where schools, care centers, hospitals, or permanent workplaces are located in the municipality of Aguada.

ECF No. 61-3 at 2, ⁋ 3; ECF No. 1-2 at 4. The second section provides as follows:

> Any proponent of an installation of a communication antenna, in addition to fulfilling Public Law Number 89 of June 6, 2000, and prior to an authorization or permit being granted for the construction of said tower by the corresponding agency or government entity, must give notice of the authorization requested

from said government entities in order to erect or construct towers on which commercial radio frequency transmission stations (antennas) are installed.

ECF No. 61-3 at 2, ⁋ 3; ECF No. 1-2 at 5. The third section states that:

The municipal administration of Aguada will evaluate the information submitted and request any necessary information or document, and it will make a call to the community of the site proposed for the installation of said communication antenna in order for an agreement to be reached with the vote of the property owners or residents of the community.

Once the necessary meetings are held, the municipality, based on the information gathered, will take the corresponding actions.

Proponents must ensure that their actions do not jeopardize the health and safety of the residents of the site proposed for the installation of the antenna. Also, it [sic] must ensure that surrounding properties are not devalued, thereby affecting the value of the properties and structures of the residents of the community.

ECF No. 61-3 at 2, ⁋ 5; ECF No. 1-2 at 5.

### C. Wireless Telecommunications and Broadband Services[4]

Claro is licensed by the Federal Communications Commission ("FCC") to provide personal wireless telecommunications and broadband services in Puerto Rico, including to the totality of the Municipality of Aguada. ECF No. 56 at 2, ⁋ 2; ECF No. 61-1 at 1, ⁋ 3; ECF No. 47 at 25, ⁋ 2. These services include mobile wireless service known as Commercial Mobile Radio Services ("CMRS"), as defined in Section 9.3 of the rules of the FCC, 47 C.F.R. § 9.3. ECF No.

---

[4] Defendants, in their motion in opposition, embed a *Daubert* argument against Plaintiff's expert, Eng. Matos-Acosta. ECF No. 61 at 3-10. Defendants argue, among other things, that Eng. Matos-Acosta's report includes very technical data without "a single mention of relevant scientific authorities that validate or otherwise support the methodology being employed," in violation of Federal Rule of Evidence 702. ECF No. 61 at 10. Defendants also take issue with Plaintiff's use of the expert report to support the majority of their proposed uncontested facts and include the following response to almost every proposed fact by Plaintiff: "Most or all of this averment deals with opinions rendered by an expert in a report. As is explained in our opposition brief, expert opinions are not susceptible to being admitted, denied or qualified." *See generally* ECF No. 61-1. Thus, Defendants admit only seven facts out of the thirty-two proposed by Plaintiff. The *Daubert* challenge will be discussed in more detail. For the sake of this uncontested facts section, the Court takes into account Plaintiff's proposed facts that are supported by Eng. Matos-Acosta's report. ECF No. 56-1. However, any proposed fact, or part of a proposed fact that relies on a portion of the report that discusses technical information outside of Eng. Matos-Acosta's expertise, contains conclusory allegations or legal arguments, or is immaterial, has been discarded.

47 at 24-25, ¶ 1, ¶ 9. CMRS is a "personal wireless service" under § 332(c)(7)(C)(i) of the Communications Act, 47 U.S.C. § 332(c)(7)(C)(i), and 47 U.S.C. § 332(c)(1)(A) ECF No. 47 at 25-26, ¶¶ 11-12. Claro is authorized to offer telecommunications services (other than mobile services) in Puerto Rico pursuant to § 214(a) of the Communications Act, 47 U.S.C. § 214(a), and Article III-2 of the Puerto Rico Telecommunications Act of 1996, 27 L.P.R.A. § 269a). ECF No. 47 at 26, ¶ 13. As such, Claro has the right to access government-owned property and public rights of way in Puerto Rico to install telecommunications facilities. *See* 27 L.P.R.A. § 269g; ECF No. 47 at 26, ¶ 14.

Offering wireless telecommunications and broadband services requires building a network that offers coverage (i.e., signal strength) to the defined area. That is accomplished using antennas that connect with the mobile devices of customers. These antennas are installed in towers of varying sizes (also referred to as "cell sites"). The coverage of any individual antenna is dependent on the height of the tower and other factors, such as the surrounding terrain. ECF No. 56 at 2, ¶ 3; ECF No. 61-1 at 1, ¶ 3. In order to transmit calls and data to and from the mobile devices of customers, antennas installed in cell sites must be connected to the core network of the wireless service provider. This can be accomplished by connecting the antenna to network equipment, which is usually installed at the base of or near the cell site. That network equipment, in turn, must be connected to a switch or other network facilities of the wireless service provider. One such way to do so is by fiber optic connection from the network equipment to the nearest wireless service provider network facility. ECF No. 56 at 2, ¶ 4; ECF No. 61-1 at 2, ¶ 4. Fiber optic cables that connect transmission equipment in cell sites to the core network are "personal wireless service facilities" under 47 U.S.C. § 332(c)(7)(C)(ii) of the Communications Act. ECF No. 56 at 2, ¶ 3; ECF No. 61-1 at 1, ¶ 3; ECF No. 47 at 26, ¶ 15.

In order to provide reliable wireless service, Claro installs multiple antennas in a single municipality to create an overlapping and interconnected system for mobile customers traveling or moving in a particular geographic area. ECF No. 56 at 2, ⁋ 5; ECF No. 61-1 at 2, ⁋ 5. Claro also considers capacity and robustness throughout the coverage area to ensure that even where there is sufficient coverage or signal, there is sufficient capacity to handle the call volume of its customers. ECF No. 56 at 2-3, ⁋ 6; ECF No. 61-1 at 2, ⁋ 6. This is done to prevent a gap in wireless service, which can occur if there is no reliable coverage, which prevents customers from connecting their mobile devices to Claro's wireless network and/or when there is a lack of capacity or limitations of capacity, which leads to low voice quality in telephone calls, dropped calls, and slow data upload and download speeds. ECF No. 56 at 3, ⁋⁋ 8- 9; ECF No. 61-1 at 2-3, ⁋⁋ 8-9. To fix such gaps in wireless services, Claro deploys additional antennas in already existing cell sites. ECF No. 56 at 3-4, ⁋ 10; ECF No. 61-1 at 3, ⁋ 10.

## IV. ANALYSIS

Under the TCA, local governments retain control "over decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A). However, the TCA imposes on localities several substantive and procedural limitations. *Town of Amherst v. Omnipoint Communications Enterprises, Inc.,* 173 F.3d 9, 15 (1st Cir.1999); *see also* 47 U.S.C. § 332(c)(7)(B). Local authorities may not "unreasonably discriminate among providers of functionally equivalent services; [or]…prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i). Further, local authorities must act upon "any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time." *Id.* § 332(c)(7)(B)(ii). If they deny an application or request, their denial "must be in writing and supported by substantial evidence

contained in a written record." *Id.* § 332(c)(7)(B)(iii). Said denial cannot be based on "the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." *Id.* § 332(c)(7)(B)(iv). "Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof" may "commence an action in any court of competent jurisdiction." *Id.* § 332(c)(7)(B)(v).

There are four issues before the Court.[5] The first issue is whether Plaintiff has demonstrated that the Municipality's denial of their request to place or construct a personal wireless service facility complied with federal law's requirement that such denial be in writing and be supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B)(iii). The second issue is whether the Municipality's denial was impermissibly based on the environmental effects of radio frequency emissions in violation of 47 U.S.C. § 332(c)(7)(B)(iv). The third issue is whether the Municipality's denial effectively prohibits the provision of personal wireless service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). The last issue is whether the Ordinance itself, cited by Municipality as the reason for its denial, has the effect of prohibiting the provision of telecommunications services in violation of 47 U.S.C. § 253(a).

Before tackling these four questions, however, there is a more basic, preliminary matter that must be addressed. Although the parties are in consensus that Claro was not seeking to build or install a new tower, they do not appear to be singing the same tune as to what exactly was the

---

[5] Plaintiff includes claims under 47 U.S.C. § 332(c)(7)(B)(i)(I) and 47 U.S.C. § 332(c)(3)(A) in the complaint. ECF No. 1 at 14-16. However, Plaintiff does not explicitly address these claims or develop any argument relating to them. Because Plaintiff does not move with specificity or elaboration in their motion for summary judgment, to the extent that Plaintiff is requesting the entry of judgment as a matter of law with respect to these claims, such request is denied.

scope of Claro's request to the Municipality of Aguada. On the one hand, a letter dated September 18, 2021 from Claro to the Mayor of Aguada reads in its pertinent part:

> We are attaching a copy of the RF_PR026T214120 map, which illustrates the construction that we intend to carry out in the indicated location. 506 feet of fiber optic cable and 3 poles in mostly aerial environment in the area located on PR-414 Road, Km. 5.3 Interior, Río Grande Ward in the municipality of Aguada.

ECF No. 61-2 at 1. At first glance, there is no explicit mention of an installation of an antenna. Furthermore, the subject section of the letter states: "Installation of Fiber Optic Cable *for* UPRM21 Antenna NW622 in Aguada" (emphasis added), not installation of fiber optic cable and an antenna. *Id.* Accordingly, Plaintiff argues that since Claro was not seeking to install an antenna and the Ordinance's overwhelming focus is on antennas, the Ordinance is not relevant and hence, inapplicable to sustain the Municipality of Aguada's purported reason to deny Claro's request for the installation of cables and poles.

Plaintiff's position as to this particular point of contention, however, is undermined by its own expert, Eng. Matos-Acosta. In his report, Eng. Matos-Acosta states: "If Claro is not allowed to deploy its facilities *and new antenna* at Cell Site (which includes the fiber optic cables to connect its equipment at the Cell Site to its network), Claro would have to build its own tower or seek a third party who would build a new tower in the area." ECF No. 56-1 at 9 (emphasis added). Eng. Matos-Acosta adds: "More importantly, it is clear that the Municipality of Aguada would oppose the building of a new tower for the same reasons it is opposing *Claro's proposal to install antennas* and fiber optic cables in the existing Cell Site." *Id.* (emphasis added).

If in fact Claro never requested to install a new antenna (repeater or otherwise), then Defendants are standing on sinking sand in trying to oppose the entry of summary judgment in Plaintiff's favor, as the Denial Notice unequivocally relies on the Ordinance and the Ordinance, in

turn, focuses on the installation of antennas.[6] Nevertheless, as previously indicated, it is not clear from the summary judgment record whether Claro wants to connect new fiber optic cables to an already existing antenna in an already existing tower, or whether it wishes to install a new antenna in an already existing tower and then connect new fiber optic cables to the new antenna. However, even if *arguendo* it is deemed that the situation is the latter, for the reasons expounded below, Plaintiff still prevails for summary judgment purposes on two of its claims.

### A.  Plaintiff's Cause of Action Under 47 U.S.C. § 332(c)(7)(B)(iii)

Claro contends that the Municipality's written denial is unsupported by substantial evidence in the record. The TCA requires that the decision of a local governing body "to deny a request to place, construct, or modify personal wireless service facilities ... be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). "Substantial evidence" review under the TCA is "the same as that traditionally applicable to a review of an administrative agency's findings of fact." *Southwestern Bell Mobile Sys. v. Todd*, 244 F.3d 51, 58 (1st Cir. 2001). (citing *Spring Spectrum L.P. v. Town of North Stonington*, 12 F.Supp.2d 247, 252 (D. Conn. 1998)). Judicial review under this standard, "even at the summary judgment stage, is narrow." *Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997). Therefore, a district court reviews the written record:

> …considered as a whole. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The reviewing court must take into account contradictory evidence in the record. But the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

---

[6] The statement of motives of the Ordinance mentions the word "antenna" at least sixteen times, while operative section of the Ordinance uses the word at least on five occasions.

*Penobscot Air Servs., Ltd. v. Fed. Aviation Admin.,* 164 F.3d 713, 718 (1st Cir.1999) (citations omitted). While this review is certainly deferential to the local authority, it is not a "rubber stamp." *Id*. at 781 n. 2. A local regulatory agency or other body "is not free to prescribe what inferences from the evidence it will accept and reject, but must draw all those inferences that the evidence fairly demands." *Todd*, 244 F.3d at 59. When the record "clearly precludes the ... decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both," that decision must be set aside. *Penobscot Air*, 164 F.3d at 718 (quoting *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 490 (1951)). The burden of demonstrating that the determination is not supported by substantial evidence is on the moving party, and "courts defer to the decision of the local authority, provided that the local board picks between reasonable inferences from the record before it." *National Tower, LLC v. Plainville Zoning Board of Appeals*, 297 F.3d 14, 23 (1st Cir. 2002).

Furthermore, the written denial must contain a sufficient explanation of the reasons for the denial to "allow a reviewing court to evaluate the evidence in the record supporting those reasons." *Id*. at 20-21. The Supreme Court has explained why municipalities must give specific reasons when they deny applications:

> The requirement that localities must provide reasons when they deny applications is further underscored by two of the other limitations on local authority set out in the Act. The Act provides that localities "shall not unreasonably discriminate among providers of functionally equivalent services," and may not regulate the construction of personal wireless service facilities "on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [Federal Communications Commission's] regulations concerning such emissions." §§ 332(c)(7)(B)(i)(I), (iv). Again, it would be considerably more difficult for a reviewing court to determine whether a locality had violated these substantive provisions if the locality were not obligated to state its reasons.

*T-Mobile South, LLC v. City of Roswell, Ga.*, 574 U.S. 293, 300-301 (2015). However, localities do not need to provide their reasons for denying applications in the same document that conveys the locality's denial of an application. *Id*. at 302. Instead, the locality "may state those reasons with sufficient clarity in some other written record issued contemporaneously with the denial." *Id*. at 294.

Here, the Municipality sent a Denial Notice to Claro which states that, given the public policy established in the Ordinance, the project was denied. ECF No. 1-1. It further states that: "The project does not favor the quality of life and health of our constituents, nor would it make a greater impact or contribution to the economic development of our town; conversely, the project will be a hazard to the health and security of the residents of these communities." *Id*. Plaintiff objects that the Denial Notice does not state the reasons for denial with sufficient clarity or "come close to explaining how the purported objections apply to the specific facts of this case." ECF No. 55 at 19 (citing *Todd*, 244 F.3d at 61). Furthermore, Plaintiff argues that the Municipality "did not hear from any witnesses, conduct a hearing, or consider any written evidence or expert reports," and that the "Denial [Notice] itself does not cite or refer to any written record or any factual evidence" beyond citing to the Ordinance, which Plaintiff argues is "neither evidence nor a written record." *Id*. at 18-19. Defendants argue that Plaintiff is insisting on an "unsupported *ad hoc* notion of [the substantial evidence] concept that somehow requires that a **nonadversary permitting transaction** somehow based its conclusions in the testimony of witnesses and other evidence, along the vein of what happens in [q]uasi-judicial administrative cases or in judicial actions." ECF No. 61 at 10 (emphasis in original). Defendants then argue that their citation to the Ordinance as the reason for the denial comports with Supreme Court precedent in *Roswell*. *Id*. at 11.

15

There is "no specific requirements regarding the format that writing must take" as long as courts can "identify the reason or reasons why the locality denied the application." *Roswell*, 574 U.S. at 300-303. "[T]hese reasons need not be elaborate or even sophisticated, but rather,…simply clear enough to enable judicial review." *Id*. at 302. In *Roswell*, the Court was able to review "detailed minutes from a City Council meeting" to understand the denial letter, which was devoid of reasons. *Id*. at 307. Here, the Denial Notice cites generally to public policy concerns expressed in the Ordinance, whose focus is on health impacts, namely cancer caused by antennas[7], as well as noting that:

> The project does not favor the quality of life and health of our constituents, nor would it make a greater impact or contribution to the economic development of our town; conversely, the project will be a hazard to the health and security of the residents of these communities.

ECF No. 1-1. While a reasonable argument can be made that the Denial Notice should have provided more specific reasons in writing in order to meet TCA requirements, in the end it is the lack of substantial evidence which carries the day for Plaintiff as to this claim.

Defendants do not cite to any evidence in the record (including but not limited to the Denial Notice) in support of the denial of Claro's request. It is unclear exactly *which* requirement Plaintiff failed to comply with and how. *See generally* ECF No. 1-2. For example, the Ordinance contains requirements on where antennas can and cannot be placed. *Id*. at 4. However, Plaintiff could not have violated this requirement as their request was for fiber optic cables, not placement of an

---

[7] Specifically, the Ordinance notes that there are "extensive and well-informed suspicions that highly frequent exposure to th[ese] type[s] of [antennas] would accelerate the development of cancer cells, among other deadly effects to humans." *Id*. at 1. The Ordinance goes on to cite one study from Dr. John Moulder, a professor of Radiotherapeutic Oncology at Medical College of Wisconsin, Milwaukee, on Electromagnetic Fields and Human Health, specifically, "Mobile Telephone[] Base Antennas and Health." *Id*. at 2. The Ordinance contends that "in an academic review on mobile phones and cancer, [Dr. John Moulder] concludes that long-term exposure to mobile phone emissions can lead to a small-to-moderate increased risk of developing certain types of cancer." *Id*.

antenna. In the alternative, if the request was for installation of an antenna, the Denial Notice still does not allow the reader to assess whether Plaintiff's proposed spot was in violation of it or even if this was the reason for the denial. The Ordinance also requires the Municipality to "make a call to the community in order for an agreement to be reached with the vote of the property owners or residents of the community," but Defendants have not cited to anything in the record to clarify whether this call was made and what the outcome of the vote was. *Id*. at 5. The Ordinance also requires Plaintiff to ensure that the project does not jeopardize the health and safety of the residents and ensure that property is not being devalued. However, once again, Defendants do not cite to any evidence on the record to shed light on whether and how Plaintiff's project impacts the health and safety of the community or devalues the properties. Because the Municipality's denials rest on "hollow generalities and empty records," it is not supported by substantial evidence.[8] *Town of Amherst*, 173 F.3d at 16. Therefore, Plaintiff prevails as a matter of law with respect to this claim.[9]

### B. Plaintiff's Cause of Action Under 47 U.S.C. § 332(c)(7)(B)(iv)

Plaintiff next argues that the Municipality is regulating the "placement, construction, or modification of personal wireless services facilities based on the environmental effects of radio frequency emissions" in violation of 47 U.S.C. § 332(c)(7)(B)(iv). ECF No. 55 at 22 (citing *Green Mountain*, 688 F.3d at 52 n.6; *SPRINTCOM, Inc. v. P.R. Regulations & Permits Admin.*, 553 F. Supp. 2d 87, 92 (D.P.R. 2008)). "Congress has preempted, as a policy matter, local consideration of the balance between the benefits of cellular communications and the health risks that may be

---

[8] Moreover, as discussed in the next section, health concerns cannot constitute substantial evidence. 47 U.S.C. 332(c)(7)B)(iv). *See also Illinois RSA No. 3, Inc. v. County of Peoria*, 963 F.Supp. 732, 745 (C.D. Ill. 1997) (holding that the generalized health concerns of citizens are insufficient to rise to the level of substantial evidence); *AT & T Wireless PCS, Inc. v. City Council*, 155 F.3d 423, 431 n. 6 (4th Cir.1998) (noting that TCA precludes "health concerns from radio emissions").

[9] In reaching this conclusion, the Court is not weighing the evidence because no evidence has been cited in support of the purported reason for the denial of Claro's installation request to the Municipality of Aguada.

associated with such communications." *Vertex Tower Assets*, 731 F.Supp.3d at 193. Courts have warned that when denials are based on health concerns, "there must be substantial evidence of some legitimate reason for rejecting the applications to avoid the conclusion that the denials were based on the impermissible health effects ground." *Town of Oyster Bay*, 166 F.3d at 495. In other words, when a denial sites health effects associated with the proposed tower, the reviewing court must be able to determine that there was another legitimate reason for the denial.

The main drive and overwhelming thrust of the Ordinance is related to environmental or health concerns, but not exclusively. Defendants argue that "none of the six sections that make up the **operative part** of the ordinance (i.e. the ones that are legally binding) is based on health concerns." ECF No. 61 at 13 (emphasis in original). They concede that the statement of motives contains references to health concerns and argue that "Plaintiff seizes on this to portray this municipal legislation as restricting telecommunications infrastructure **based on** those concerns." *Id*. at 12 (emphasis in the original). However, the Municipality does specifically cite health grounds as one of the reasons for its denial. ECF No. 1-1 ("The project does not favor the quality of life and health of our constituents…"). Moreover, the third section of the "operative part" of the Ordinance clearly states that "[p]roponents must ensure that their actions do not jeopardize the health and safety of the residents of the site proposed for the installation of the antenna." ECF No. 1-2 at 5. Therefore, the Municipality did deny the request, if not wholly at least in part, based on the health grounds concerns expressed in the Ordinance as they specifically state it and reference "public policy" concerns expressed in the Ordinance, which almost all to the health effects of emissions.[10] *Id*. at 1-3. The Court in *T-Mobile Northeast LLC v. Town of Barnstable*, 2020 WL

---

[10] While the Ordinance's concerns are overwhelmingly health related, there are two concerns not related to health. The first appears in the statement of motives and it states that: "repeater antennas and mobile or cell phones can create interferences in electronic equipment that operate on similar frequencies, such as computers, equipment for hospitals

3270878 at * 8 (D. Mass. June 17, 2020) held that the court could not rule on whether the denial was based on impermissible environmental concerns given the lack of clarity as to what the municipality did consider in issuing its denial. In *Barnstable*, however, the denial did not mention the environmental health concerns. *Id*. Here, the denial specifically mentions health concerns and the Ordinance's focus is clearly the same.

Under these circumstances, "there must be substantial evidence of some legitimate reason for rejecting the applications to avoid the conclusion that the denials were based on impermissible health grounds." *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 495 (2d Cir. 1999). The Denial Notice does cite other reasons for the denial. However, none of those reasons are supported by the requirements of the Ordinance. Beyond the requirement that Plaintiff ensure the health and safety of the community, the other requirements have to do with placement of the tower a distance away from where people live and work, providing Notice to the municipality, engaging the community and hearing their concerns, and the devaluation or properties. ECF No. 1-2 at 3-5. None of these reasons are mentioned in the Denial Notice, except for a general reference to the Ordinance.[11] Therefore, there is no substantial evidence that the reason for rejecting the application was something other than the health concerns cited. Even if the Municipality relied on valid reasons to support its decision, that alone does not immunize its violation of a statutory limitation.

and healthcare centers, radio equipment, etc." ECF No. 1-2 at 3. Even if such a concern was stated in the operative section, and not in the statement of motives, the Denial Notice does not contain any indication that Plaintiff's request was denied on those grounds. The next non-health related concern is contained within the operative section, and it requires that proponents "ensure that the surrounding properties are not devalued, thereby affecting the value of the properties and structures of the residents of the community." *Id*. at 5. However, this may or may not be related to health. For example, properties can be devalued either because of the aesthetics of the antennas or because the impact of the antennas on the health of the community. Regardless, the Denial Notice does not contain any indication that Plaintiff's request was denied because of concerns of devaluation of the property.

[11] The Denial Notice does make explicit reference to the "impact or contribution to the economic development of our town." ECF No. 1-1. However, the Ordinance itself does not discuss economic development, nor does the Denial Notice articulate even succinctly how or why Claro's request hurts the Municipality of Aguada's economic development.

*See, e.g., T-Mobile Ne. LLC v. Loudoun Cty. Bd. of Supervisors*, 748 F.3d 185, 195 (4th Cir. 2014) (holding that relying on impermissible health effects grounds invalidates a decision to deny even if permissible grounds also were considered). Therefore, summary judgment is granted as to this claim.

### C. Plaintiff's Cause of Action Under 47 U.S.C. § 332(c)(7)(B)(i)(II)

The third inquiry to be resolved is whether the Municipality's denial amounts to an effective prohibition of personal wireless services. The TCA provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government ... shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). The effective prohibition standard "can be violated even if substantial evidence exists to support the denial of an individual permit under the terms of the town's ordinances." *Nat'l Tower*, 297 F.3d at 20. Thus, a district court evaluates an effective prohibition claim without any deference to the local authority and may rely on evidence "that is outside of the administrative record compiled by the local authority." *Id*. at 22.

The carrier has the burden of showing an effective prohibition has occurred. *Omnipoint Holdings, Inc. v. City of Cranston,* 586 F.3d 38, 48 (1st Cir.2009). "When a carrier claims an individual denial is an effective prohibition, virtually all circuits require courts to (1) find a 'significant gap' in coverage exists in an area and (2) consider whether alternatives to the carrier's proposed solution to that gap mean that there is no effective prohibition." *Id.* Therefore, while "an individual denial is not automatically a forbidden prohibition ... [,] we [cannot] rule out the possibility that—based on language or circumstances—some individual decisions could be shown to reflect, or represent, an effective prohibition on personal wireless service." *Town of*

*Amherst,* 173 F.3d at 14. This determination is largely fact driven based on the record. *Omnipoint Holdings,* 586 F.3d at 48 (citing *Second Generation Props.*, 313 F.3d at 631).

The parties disagree as to whether a coverage gap exists. In order to show the existence of a network, Plaintiff points to the expert report of Eng. Matos-Acosta, whose analysis and report identifies the existence of a coverage gap and the alternatives to addressing it. ECF No. 55 at 27. Defendants embed a *Daubert* challenge related to Plaintiff's expert. Because Plaintiff's effective prohibition claim relies on said expert, we must assess Defendants' *Daubert* arguments first.

### 1. Defendants' *Daubert* Motion to Exclude Plaintiff's Expert

Defendants argue that Eng. Matos-Acosta's report does not have any citation to "relevant scientific authorities that validate or otherwise support the methodology being employed" in the report, in violation of Federal Rule of Evidence 702. ECF No. 61 at 10. For the following reasons, Defendants' *Daubert* motion to exclude Plaintiff's expert is denied.

Eng. Matos-Acosta was hired to conduct an analysis of the current wireless service coverage in the Municipality of Aguada around a site that Claro identifies as "AGD1622," where there is an existing tower. The purpose of his report was to identify the existence of a coverage gap and the alternatives to addressing it. ECF No. 56-1 at 2-3, ¶ 8. Eng. Matos-Acosta states in his sworn affidavit accompanying the report that he utilized his twenty-nine years of experience in electrical engineering, design, optimization, and planning of radio frequency ("RF") wireless networks, specifically, his work experience in wireless systems for Claro since 1995, in preparing said report. *Id*. at 1-2, ¶¶ 2, 4, 6, 7. Specifically, Eng. Matos-Acosta collected data from Claro's Element and Network Management Server (the "ENM Server") during a one-week period in October of 2023 to assess the RF wireless coverage and user experience in Aguada's Río Grande sector. *Id*. at 5. Eng. Matos-Acosta explains each industry term used or relied on in his report. *Id*.

at 5-7. He provides numerous maps which demonstrated that signal levels in the subject area failed to meet Claro's service-level standards to support his opinion that said levels are insufficient to serve their customers in the area. *Id*. at Appendix II, III, IV, V, and VI. Thus, a reading of his report makes clear that he gathered data, conducted various tests, and evaluated the findings using his experience in the telecommunications industry to determine whether a coverage gap exists and what options are available to address said gap. *See generally* ECF No 56-1. The Municipality has not provided any testimony or expert opinion to rebut Claro's showing that a significant gap in coverage exists. Most importantly, the Municipality's *Daubert* challenge does not point to specific parts of the report that were insufficient or articulate what about Eng. Matos-Acosta's methodology is not in conformance with widely accepted industry methodologies, practices, and parameters. Instead, it attacks it broadly as unsupported by citations. ECF No. 61 at 3-10. Accordingly, Defendants' *Daubert* challenge is denied, and the Court will consider the expert report of Eng. Matos-Acosta for purposes of resolving this motion for summary judgment.[12]

### 2. Effective Prohibition

As previously outlined, "[w]hen a carrier claims an individual denial is an effective prohibition, virtually all circuits require courts to (1) find a 'significant gap' in coverage exists in an area and (2) consider whether alternatives to the carrier's proposed solution to that gap mean that there is no effective prohibition." *Id.*

---

[12] Defendants argue that the expert report was conducted in October of 2023, more than a year after the denial, and thus, the alleged coverage gap identified is not relevant in determining whether a coverage gap existed at the time of the denial in 2022. However, whether the coverage gap exists today is still highly relevant, as Claro is challenging the denial of a proposal that would fix that gap. Furthermore, effective prohibition claims are reviewed *de novo* and courts routinely rely on evidence outside the administrative record and rely on expert testimony and other evidence prepared addressing conditions after the denial decision. *See T-Mobile Ne., LLC v. Town of Barnstable,* No. 19-CV-10982, 2020 WL 3270878, at *7 (D. Mass. June 17, 2020); *Eco-Site, Inc. v. Town of Wilmington,* 2019 WL 1332621 at *15 (D. Mass. Mar. 25, 2019).

With regard to the first prong of this test, the First Circuit has identified five relevant metrics to consider in the "significant gap" analysis: 1) the "physical size of the gap," 2) "the area in which there is a gap," 3) "the number of users the gap affects," 4) "whether all of the carrier's users in that area are similarly affected by the gaps," and 5) "data about percentages of unsuccessful calls or inadequate service during calls in the gap area." *Omnipoint Holdings*, 586 F.3d at 49. The carrier must show whether a significant gap exists within the individual carrier's network and "a significant gap must be 'large enough in terms of physical size and number of users affected' to distinguish it from 'a mere, and statutorily permissible, dead spot.'"[13] *Green Mountain Realty Corp., v. Leonard*, 688 F.3d 40 (1st Cir. 2012) (quoting *Second Generation*, 313 F.3d at 631); *see also Omnipoint Holdings,* 586 F.3d at 49.

With regard to the second prong, there are two sets of circumstances that qualify as a violation. "The first is where the town sets or administers criteria which are impossible for any applicant to meet.... The second involves the situation where the plaintiff's existing application is the only feasible plan; in that case, denial of the plaintiff's application 'might amount to prohibiting personal wireless service.'" *Second Generation*, 313 F.3d at 630 (quoting *Town of Amherst,* 173 F.3d at 14). However, "there can be no general rule classifying what is an effective prohibition. It is a case-by-case determination." *Id*. Therefore, there are sets of circumstances outside of the two mentioned above that could amount to an effective prohibition.

### a. Significant Gap

Courts have accepted expert reports identifying coverage gaps through coverage maps and a variety of data. *See Town of Bedford*, 2018 WL 6201717 at *6 (D.N.H. Nov. 28, 2018) (finding

---

[13] Dead spots are defined as "[s]mall areas within a service area where the field strength is lower than the minimum level for reliable service," 47 C.F.R. § 22.99. The presence of dead spots does not necessarily mean that service is inadequate. *See id.* § 22.911(b).

that a radio frequency analysis submitted with the provider's application to the zoning board identifying a coverage gap and expert report in support of plaintiff's summary judgment motion constituted sufficient evidence of coverage gap); *Nextel Commc'ns of the Mid-Atlantic, Inc. v. Town of Sudbury,* 2003 WL 543383 at *12 (D. Mass. Feb. 26, 2003) (noting that coverage maps "are commonly relied upon by wireless carriers, zoning boards, and courts to determine the extent of coverage in a given locality"). Here, Eng. Matos-Acosta determines that there exists a coverage gap and that the installation of an antenna at the cell site proposed by Claro would successfully address those deficiencies. ECF No. 56-1 at 8. Among other things, Eng. Matos-Acosta notes that the data he collected and data from the United States Census Bureau indicates high population density in the four sectors of Aguada. However, he states that the current facilities leave a number of areas in the municipality without adequate coverage. He therefore asserts that Claro lacks competitive and reliable coverage for numerous residences and businesses in the municipality. He also estimates that this affects approximately 6,578 residents in 4,710 houses according to 2020 census data. *Id*. at 8-9. Further, Eng. Matos-Acosta analyzed the RF environment through Download Speed ("DL Speed"), Reference Signal Received Power ("RSRP"), Reference Signal Received Quality ("RSRQ"), and Signal-to-Interferenceplus- Noise Ratio ("SINR"). *Id*. at 5-7. He provided comparable metrics and maps in support of his conclusion that the tests he ran showed a coverage gap. *Id*. at 7.

Courts have found that issues of effective prohibition are highly factual and often not appropriately decided on summary judgment when there is conflicting expert testimony leading to genuine issues of material fact. *See e.g.*, *Varsity Wireless, LLC v. Town of Boxford*, 2018 WL 3970677 at *22 (D. Mass. June 29, 2018). Here, however, Defendants do not provide expert testimony of their own to rebut Eng. Matos-Acosta's opinions. Further, Defendants do not admit,

deny, or qualify Plaintiff's proposed facts that cite to the expert report.[14] Summary judgment on this issue is not automatically inappropriate absent rebuttal expert testimony from Defendants. *See Industrial Tower and Wireless, LLC v. Haddad*, 109 F.Supp.3d 284, 301 (D. Mass. May 18, 2015) (holding that the provider met its burden on summary judgment of establishing a gap in wireless coverage where the provider provided multiple propagation studies showing lack of service and defendants did not oppose providers' statement or raise "any significant issues of fact in their Opposition."). However, resolution of this issue and a determination as to whether it is an undisputed fact that a coverage gap exists is not necessary at this juncture because Plaintiff has not met its burden of establishing that no other viable alternatives exist or that the Municipality of Aguada's requirements are impossible to comply with. For the sake of analysis, we assume a coverage gap exists and move to the second prong.

### b. Feasible Alternatives and Impossibility

A carrier has the heavy burden to prove it " 'investigated thoroughly the possibility of other viable alternatives' before concluding no other feasible plan was available." *Omnipoint Holdings*, 586 F.3d 38 at 50 (internal citation omitted). When the carrier has not met its burden, the evidence has been essentially undisputed that the carrier had other alternatives. In *Town of Amherst,* the court held the carrier did not show it was entitled to summary judgment because it "practically admitted that *somewhat* lower towers were technically feasible" and it was unclear "that locating a tower within the historic district was technically essential." 173 F.3d at 11, 15 (emphasis in original). Similarly, in *Second Generation Properties,* the carrier presented no explanation why its

---

[14] Defendants argue that "expert opinions are neither true nor false but rather they are tools that are assessed in terms of reliability, relevance and ultimately of persuasiveness." ECF No. 61 at 8. In other words, Defendants argue that Eng. Matos-Acosta's opinions as to coverage gap and feasible alternatives are determinations to be made at trial, after submitting the expert to cross-examination. *Id.* (citing *Hoover v. Hyatt Hotels Corp.*, 99 F.4th 45, 58 (1st Cir. 2024)).

proposal was the only feasible site. 313 F.3d at 635. Moreover, the carrier's "own experts acknowledged that its land was not the only location where a tower could provide coverage in the alleged gap." *Id.* The Seventh Circuit has also found a carrier had not met its burden because it presented no evidence it investigated alternative solutions other than conclusory statements. *VoiceStream Minneapolis, Inc. v. St. Croix County,* 342 F.3d 818, 833, 834–35 (7th Cir. 2003). Here, Eng. Matos-Acosta opined that there are no feasible alternatives to the installation of a new antenna at the cell site because:

> There is no other existing cell site or tower in the vicinity of the Aguada Río Grande Sector from which to serve that area and address the coverage and capacity gap. If Claro is not allowed to deploy its facilities and new antenna at the Cell Site (which includes the fiber optic cables to connect its equipment at the Cell Site to its network), Claro would have to build its own tower or seek a third party who would build a new tower in the area. That is not feasible from a permitting or commercial perspective, particularly in the Aguada Río Grande Sector, when there is an existing tower that is underutilized. Nor does it make sense to do so. More importantly, it is clear that the Municipality of Aguada would oppose the building of a new tower for the same reasons it is opposing Claro's proposal to install antennas and fiber optic cables in the existing Cell Site. That is why the only feasible way forward for Claro to address the coverage and capacity gap is to use the Cell Site.

ECF No. 56-1 at 9. While the first two sentences of this portion of Eng. Matos-Acosta's opinion are not conclusory, the remaining sentences engage, at least partially, in speculation. For example, Eng. Matos-Acosta does not explain why it is not commercially feasible to build a new tower or why, from a permitting perspective, it is not feasible to build a tower in a less populated area or why putting a new tower in a different location would not address the coverage gap. Moreover, Eng. Matos-Acosta does not explain how he knows that the Municipality would oppose the building of a new tower for the same reasons it is opposing the current proposal. Regardless, there is no evidence that the Claro investigated alternative solutions other than these statements by Eng. Matos-Acosta, which are made over a year after the denial. Ultimately the question is one of

26

a "practical inquiry into feasible, available alternatives." *Omnipoint Holdings*, 586 F.3d at 52. In making this determination, the evidence in *Omnipoint Holdings* showed that:

> …Omnipoint had in fact systematically searched for solutions to the gap problem using technologically reliable criteria and methodologies. Omnipoint considered different types of solutions: adding to existing wireless towers; adding to existing structures of the needed height, including utility poles; and new construction of facilities on unoccupied land. Further, Omnipoint showed it had made financial offers according to its usual rates, increased its rates, and then offered an extraordinary bonus in an effort to reach a contract with the country club but was unsuccessful.

There is no comparable evidence here, and Eng. Matos-Acosta's statements regarding feasible alternatives fall short.

Moreover, Plaintiff does not provide evidence for the Court to determine that the Ordinance's non-environmental or health related requirements are impossible to comply with. The Ordinance prohibits installation of antenna near locations where high concentrations of people reside or work, but does not specify what exact distance away such an installation would need to be. However, it does cite to Public Law Number 89 of June 6, 2000, which establishes the parameters and distances for the construction of telecommunication towers on which radio frequency transmission stations (antennas) are installed. ECF No. 1-2 at 3. Second, it requires that proponents ensure that their actions do not jeopardize the health and safety of the residents.[15] Third, it requires that proponents ensure that the surrounding properties are not devalued. Although some of these requirements could have been more precise, the distance for construction and devaluation components do not appear on their face to be impossible to comply with and thus do not constitute a blanket prohibition. In order to evaluate whether the circumstances demonstrate an effective prohibition, the plaintiff must "show from language or circumstances not just

---

[15] As previously discussed, this "requirement" is impermissible under 47 U.S.C. § 332(c)(7)(B)(iv).

that *this* application has been rejected but that further reasonable efforts are so likely to be fruitless

that it is a waste of time even to try." *Town of Amherst,* 173 F.3d at 14. "Given the fact-intensive

nature of the inquiry, it is difficult to see how summary judgment could be an appropriate vehicle

for resolving effective prohibition claims in favor of either side except in the rarest of

circumstances." *SNET Cellular, Inc. v. Angell*, 99 F. Supp.2d 190, 198 (D.R.I. 2000). Without an

evidentiary hearing or bench trial, the Court cannot make a determination that the denial

constituted an effective prohibition. Given that Plaintiff has not met its burden, summary judgment

on this claim is not appropriate.

### D.  Plaintiff's Cause of Action Under 47 U.S.C. § 253(a)

Lastly, Claro argues that the Ordinance itself is a violation of 47 U.S.C. § 253(a) ("Section

253"), which prohibits state or local statutes, regulations, or requirements that "prohibit or have

the effect of prohibiting the ability of any entity to provide an interstate or intrastate

telecommunications service." Section 253 represents a "broad preemption of laws that inhibit

competition."[16] *Puerto Rico Tel. Co. v. Telecomms. Regulatory Bd. of P.R.*, 189 F.3d 1, 11 n.7 (1st

Cir. 1999). Section 253(a) in particular "authorizes preemption of state and local laws and

regulations expressly or effectively prohibiting the ability of any entity to provide

telecommunications services." *Puerto Rico Telephone Co., Inc. v. Municipality of Guayanilla*, 450

F.3d 9, 16 (1st Cir. 2006). The test for Section 253 requires a court to consider whether it

"materially inhibits or limits the ability of any competitor or potential competitor to compete in a

---

[16] The difference between "effective prohibition" claims under Section 332(c) and preemption claims under Section 253(a) is that the former extend to "individual zoning decisions" while the latter seeks to invalidate entirety a state or local statute or regulation that has the effect of prohibiting a carrier from providing services. *See VoiceStream Minneapolis, Inc. v. St. Croix County*, 342 F.3d 818, 833 (7th Cir. 2003). In other words, Section 253 broadly prohibits state or local laws that prohibit or have the effect of prohibiting the provision of telecommunication services, while 47 U.S.C. § 332(c)(7)(B)(i)(II) specifically addresses personal wireless service facilities.

fair and balanced legal and regulatory environment." *Id*. at 18. The prohibition need not be complete or insurmountable to violate Section 253. *Id*. Further, Section 253(b) states that nothing in Section 253 "shall affect the ability of a state to impose, on a competitively neutral basis… requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the right of consumers." 47 U.S.C. § 253(b). A law that violates Section 253(a) is not preempted if it falls under Section 253(b). *See Municipality of Guayanilla,* 450 F.3d at 16.

"In the First Circuit, a plaintiff may meet its burden of demonstrating that a regulation effectively prohibits its ability to provide wireless services by showing the mere possibility of an effective prohibition, rather than by showing an actual effective prohibition." *ExteNet Systems, Inc. v. City of Cambridge,* 481 F.Supp.3d 41, 56 (D. Mass. Aug. 26, 2020). The court in *Municipality of Guayanilla* found that the plaintiff had met their burden of showing an effective prohibition under § 253(a) by providing analysis of what would happen if every municipality adopted the ordinance in question, even though only the municipality in the suit had adopted the ordinance. 450 F.3d at *18; but see Level 3 Comm'ns, L.L.C. v. City of St. Louis*, 477 F.3d 528, 533 (8th Cir. 2007) (disagreeing with the First Circuit's reasoning that a mere possibility of effective prohibition is enough to satisfy plaintiff's burden under § 253(a)). A plaintiff has the initial burden of showing that a local authority's action may constitute an effective prohibition under § 253.[17] *Id*. at 21. The burden then shifts to the defendant to show that the provision in question protects public safety, ensures quality universal service, protects the rights of consumers,

---

[17] Here, Plaintiff does not advance any arguments related to Section 253(b). Thus, the Court will not address this part of the statute. However, Section 253(b) applies only to state, not local, regulations. *See* 47 U.S.C. § 253(b) ("Nothing in this section shall affect the ability of a *State* . . . .") (emphasis added); *Sw. Bell Wireless, Inc. v. Johnson County Bd. of County Commsrs.*, 199 F.3d 1185, 1192 (10th Cir. 1999).

or is an exercise of a local authority's right to manage public rights of way and receive compensation for their use. *See id.*

Claro does not advance specific arguments supported by evidence that allow an inference that Defendants' actions materially limit or inhibit their ability or any potential competitor's ability to compete in a fair and balanced legal and regulatory environment. Instead, Plaintiff makes conclusory allegations that Defendants' actions prohibit Claro from providing telecommunication services because the Ordinance's requirements are overly broad. ECF No 55 at 35-36. ECF No 1-2 at 4. Plaintiff's only argument as to Section 253(a) is that the Ordinance's prohibition of the installation of antennas in locations "where a high concentration of families reside, or where schools, care centers, hospitals, or permanent workplaces are located" is so expansive in scope that it effectively makes it impossible to deploy antennas where they need to be deployed. *Id*. at 36; ECF No 1-2 at 4. The only support for this assertion is a citation to *Omnipoint Holdings*, explaining that carriers need to build more facilities, especially in populated areas, to continue providing reliable coverage. ECF No. 55 at 36; 586 F.3d at 51. While the Ordinance's requirements are admittedly broad, on its face, none of the non-environmental or health related requirements (to the extent there are any), individually or in combination, categorically prohibit the installation of new antennas. If the ordinance mandated that no wireless services be located within a particular radius of a school, home, or workplace, for example, a plaintiff could show that, because of the number and locations of schools or homes, the rule constituted an effective prohibition. Here, however, Plaintiff makes no such showing. Thus, Plaintiff's request for entry of judgment in its favor as a matter of law is denied.

## V.    REMEDY

When a decision by a state or local government violates any of the provisions of section 332(c)(7)(B), "local law is pre-empted in order to effectuate the [Telecommunications Act's] national policy goals," *Second Generation Props., L.P. v. Town of Pelham*, 313 F.3d 620, 627 (1st Cir. 2002). Although the TCA does not expressly identify any particular form of mandatory remedy, the First Circuit has held that injunctive relief—not a remand—is often the appropriate remedy for cases brought under section 332(c)(7)(B)(v). *See Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999); *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 41 (1st Cir. 2014); *2018 Declaratory Ruling*, 33 FCC Rcd. at 9092.

Plaintiff argues that if summary judgment is granted in its favor on any one of the aforementioned claims, the case should be dismissed, and the Court should enter judgment vacating the Municipality's Denial Notice and compelling the Municipality to grant the request Claro filed for the installation of the personal wireless service facilities at issue. ECF No. 55 at 3, 27. Violation of the "substantial evidence requirement" under 47 U.S.C. § 332(c)(7)(B)(iii) of the TCA is an independent ground for ordering injunctive relief. *T-Mobile Ne. LLC v. City of Lawrence,* 755 F. Supp. 2d 286, 292 (D. Mass. 2010)*.* However, injunctive relief may not be appropriate in every case. A remand, rather than an injunction, may be more appropriate "where there has been 'good faith confusion by a board.'" *See T-Mobile Ne. LLC v. City of Lawrence*, 755 F. Supp. 2d 286, 292 (D. Mass. 2010). There is nothing in the record that hints to any confusion by the Municipality. Furthermore, there does not appear to be any zoning work that remains to be completed, as there is no zoning-based reason for denying the application. *See Town of Canton*, 731 F.Supp at 196.

In further support against remand is the terms of the TCA which requires that the local zoning authorities act on requests for authorization to locate wireless facilities "within a reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii). The FCC has promulgated regulations (commonly referred to as a "shot clock"), under which a "reasonable period of time" is presumptively (but rebuttably) set at "90 days to process an application to place a new antenna on an existing tower and 150 days to process all other applications." *See City of Arlington v. F.C.C.*, 569 U.S. 290, 295 (2013) (affirming the FCC's authority to set the shot clock). Here, Claro requested the Municipality's endorsement of the proposed project on September 23, 2021. ECF No. 56 at ℙ 30; ECF No. 61-1 at 7, ℙ 30. After no word from the Municipality, on April 22, 2022, Claro filed suit in state court against the Municipality of Aguada requesting a writ of mandamus ordering the Municipality respond to Claro's request. ECF No. 27 at 26, ℙ 18. During a hearing held on May 18, 2022, the Municipality agreed to notify, in writing, the Municipality's position on Claro's request for the endorsement of the fiber buildout. ECF No. 27 at 26, ℙ 19. On June 1, 2022, the Municipality issued a notice denying Claro's request (the "Denial Notice"). ECF No. 56 at 8, ℙ 31; ECF No. 61-1 at 7, ℙ 31;  ECF No. 27 at 27, ℙ 20. By any measure, the matter has been pending far longer than 90 and 150-days, and "Congress did not intend multiple rounds of decisions and litigation, in which a court rejects one reason and then gives the board the opportunity, if it chooses, to proffer another." *National Tower*, 297 F.3d at 21. Therefore, the Court finds that Plaintiff's request for a declaration and judgment that the Municipality's Denial Notice is not supported by substantial evidence and rests, at least in part, on impermissible environmental effects, and there in violation of federal law, is warranted.

VI.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (ECF No. 55) is GRANTED IN PART and DENIED IN PART.

The Municipality's denial of Claro's application was not supported by substantial evidence in the written record as required by 47 U.S.C. § 332(c)(7)(B)(iii). Thus, summary judgment is GRANTED as to this cause of action. Because the denial impermissibly relied on environmental effects in violation of 47 U.S.C. § 332(c)(7)(B)(iv), summary judgment is also GRANTED as to this cause of action. Regarding the remaining claims, Plaintiff's motion for summary judgment is DENIED.

Having found in favor of Claro on the violation of the TCA under 47 U.S.C. § 332(c)(7)(B)(iii), and given the weight of authority that injunctive relief best serves the TCA's stated goal of expediting resolution of this type of action, we hold that an injunction ordering the Municipality to issue the permits is an appropriate remedy. *See* 47 U.S.C. § 332(c)(7)(B)(v). Accordingly, Claro shall file for the Court's review a proposed order and judgment reflecting the injunctive and declaratory relief that they seek, but within the parameters of this Opinion and Order, by April 23, 2025.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2025.

s/Marcos E. López
U.S. Magistrate Judge